# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## CIVIL CASE NO. 5:25-cv-00144-MR

| | |
|---|---|
| GRADY STEELE, )<br><br>Petitioner, )<br><br>vs. )<br><br>LESLIE COOLEY DISMUKES, )<br>Secretary of the North Carolina )<br>Department of Adult Correction, )<br><br>Respondent. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on the <u>pro</u> <u>se</u> Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254, by Grady Steele (herein "Petitioner") and its amendment as a matter of course. [Docs. 1; 6]. Also before the Court are the parties' cross motions for summary judgment [Docs. 11; 16], as well as the Petitioner's motions for an extension of time [Doc. 17], to stay this proceeding [Doc. 20], and to appoint counsel [Doc. 21].

## I. PROCEDURAL BACKGROUND

The Petitioner is a prisoner of the State of North Carolina. [Doc. 1]. The Petitioner was convicted by a jury on September 19, 2022, in Iredell County Superior Court on charges of felony larceny of motor vehicles,

misdemeanor fleeing to elude arrest with a motor vehicle, misdemeanor resisting a public officer, and misdemeanor first-degree trespass. State v. Steele, No. COA23-425, slip op. at 1. (N.C. App. 2024) (unpublished). Following the jury's verdict, the Petitioner entered a guilty plea to having attained habitual felon status. [Doc. 1 at 1]. According to the North Carolina Department of Adult Correction Database,[1] the state trial court consolidated all of the Petitioner's convictions for purposes of sentencing and imposed upon him an active term of 90 to 120 months' incarceration. The Petitioner filed a direct appeal, raising as his sole argument that the trial court erred in instructing the jury on flight. Steele, supra, slip op. at 2. In its unpublished opinion filed January 16, 2024, the North Carolina Court of Appeals concluded that "the trial court did not err in instructing the jury on flight, and that [Petitioner] received a fair trial, free from prejudicial error." [Id.]. The Petitioner neither sought further direct review in the North Carolina Supreme Court nor the U.S. Supreme Court. [Doc. 1 at 3].

On September 25, 2024, the Petitioner filed a Motion for Appropriate Relief ("MAR") in the Iredell County Superior Court. [Doc. 12-4 at pp. 3-9]. In his MAR, the Petitioner asserted that he had not received any of "the 484

---

[1] See https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0871322&searchOffenderId=0871322&searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1 (herein "NCDAC Database"); Fed. R. Evid. 201.

days of confinement credit" for being held in custody while his direct appeal was pending. [Id.]. The state trial court denied Petitioner's MAR on January 24, 2025. [Doc. 1-2 at 1]. The Petitioner filed a certiorari petition with the North Carolina Court of Appeals on February 10, 2025, seeking review of the trial court's order denying his MAR, which the appellate court denied on May 21, 2025. [Id. at 2]. The Petitioner thereafter filed his Petition for Writ of Habeas Corpus in this Court on September 8, 2025. [Doc. 1].

In his § 2254 petition, the Petitioner raises as his sole Ground that he should have received credit toward his sentence for 484 days he spent in confinement while his appeal was pending. [Doc. 1 at 6]. The Petitioner's allegations, taken together with matters of public record, appeared to show that Petitioner had in fact received full credit for the time he served between his date of conviction and the conclusion of his appeal. Nevertheless, the Court could not conclude from the record before it that the Petitioner was not entitled to some form of relief, as the facts could not be discerned with any certainty. Thus, the Court entered an Order on November 25, 2025, directing the Respondent to answer or otherwise plead to the petition. [Doc. 4].

On December 22, 2025, before the Respondent filed any document responsive to the petition, the Petitioner filed a Motion to Amend his petition to add five more Grounds. [Doc. 6]. With regard to the Petitioner's Motion to

Amend, the Court concluded that leave was not necessary under Federal Rule of Civil Procedure 15 and entered an Order on January 16, 2026, deeming the original petition, together with the Petitioner's amendment as a matter of course, as the operative petition in this action. [Doc. 8]. In this same Order, the Court granted the Respondent additional time to file an answer or other response to the operative petition. [Id.].

On February 26, 2026, the Respondent filed her Answer. [Doc. 10]. Also on that date, the Respondent filed a Motion for Summary Judgment [Doc. 11] and a Memorandum with exhibits in support thereof. [Doc. 12]. In accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Court entered an Order March 5, 2026, advising the Petitioner, who is proceeding pro se, of the heavy burden that he must carry in opposing the Respondent's Motion for Summary Judgment. [Doc. 13]. The Court explained that if the Petitioner had any evidence to offer to show that there is a genuine issue of fact, he must present it to this Court on or before April 6, 2026, in a form which would otherwise be admissible at a trial. [Id.].

On May 4, 2026, the Petitioner filed a Motion for Summary Judgment. [Doc. 16]. The following day, the Petitioner filed a Motion For Extension of Time to respond to the summary judgment motion filed by the Respondent. [Doc. 17]. The Respondent filed her Response in opposition to the

Petitioner's summary judgment motion May 18, 2026. [Doc. 19]. That same day, the Petitioner filed a Motion to Stay [Doc. 20] and a Motion to Appoint Counsel. [Doc. 21].

## II.     FACTUAL BACKGROUND

According to the North Carolina Court of Appeals, the facts adduced at the Petitioner's trial showed the following:

> On 9 July 2020, the Statesville Police Department received a call for "an alarm at Great Western Motorcycle," a power sports dealership. Video surveillance showed several individuals removing vehicles from the property. The first officers to respond to the scene saw that "two ATVs and one jet ski" had been moved off the dealership property through a hole cut into the chain link fence. There was a "very large" U-Haul positioned nearby.
>
> As Officer Travis Chapman approached the U-Haul, he saw "a couple of pairs of feet" running on the other side of the U-Haul. "As [Officer Chapman] saw the feet running, [he saw] the vehicles['] brake lights turn on and then the U-Haul truck, the engine start and begin to take off or pull off[,]" despite the officer's commands to stop. While other officers, in their separate vehicles, pursued the U-Haul, Officer Chapman pursued another individual who fled into the woods. Troutman Police Department officers assisted in the chase of the U-Haul, and deployed stop sticks in an attempt to disable the U-Haul's tires. The second time, the stop sticks disabled three of the U-Haul's tires; the U-Haul then ran a red light and ran off the road. [Petitioner], who was the driver of the U-Haul, exited the U-Haul and ran. A K-9 officer eventually located [Petitioner] in some bushes, from which officers removed him. Officers found [Petitioner]'s driver's license and the rental agreement in the cab of the U-Haul, which had been rented to [Petitioner] a few hours earlier.

Steele, supra, slip op. at 2-3.

## III.    PENDING PROCEDURAL MOTIONS

### A.    The Petitioner's Motion for Extension of Time

As noted above, the Court's <u>Roseboro</u> Order entered on March 5, 2026, advised the Petitioner that he had until April 6, 2026, to file any evidence and arguments he wished to use to oppose the Respondent's summary judgment motion. [Doc. 13].  On May 5, 2026, the Petitioner filed a Motion For Extension of Time to File Response. [Doc. 17].  In this motion, the Petitioner explains that on February 26, 2026, he was transferred to the Caldwell Correctional Institution, and then on March 10, 2026, he was transferred to the Sampson Correctional Institution.  The Petitioner asserts that "these transfers . . . caused a hold up for Petitioner to receive the [Respondent's Motion for] Summary Judgment and the Roseboro Order filed by the Courts for Petitioner to examine and reply to."  [Doc. 17 at 2 (errors uncorrected)]. The Petitioner requested an extension up to and including May 8, 2026, to file his documents responsive to Respondent's summary judgment motion. [<u>Id.</u>].

The Court's Docket Sheet reflects that the Petitioner filed two notices of address change which corroborate his prison transfer explanation.  [Docs. 14; 15]. Further, the Petitioner filed his Motion for Summary Judgment on May 4, 2026, which the Court considers as the Petitioner's opposition to the

Respondent's summary judgment motion. Accordingly, for good cause shown by the Petitioner, the Court will grant his motion for extension of time [Doc. 17] and deem timely filed the Petitioner's Motion for Summary Judgment as his opposition to the Respondent's summary judgment motion.

**B.     The Petitioner's Motion to Stay**

The Petitioner's Motion to Stay [Doc. 20] is premised upon an argument contained in the documents included with his Motion for Summary Judgment. [Doc. 16]. In his brief accompanying his summary judgment motion, the Petitioner asserts for the first time that his appellate counsel was ineffective. [Doc. 16-1 at 4]. Specifically, the Petitioner asserts that his trial counsel filed a motion to dismiss all his charges with the state trial court thus preserving for appellate review an argument that insufficient evidence existed to sustain his convictions but that his appellate counsel failed to raise this issue on appeal. [Id.]. The Petitioner contends that his sufficiency of the evidence argument "was a stronger argument than the flight instruction." [Id.]. Acknowledging that this claim is unexhausted, the Petitioner requests a stay of these proceedings to permit him to return to state court to exhaust his Sixth Amendment claim. The Petitioner's stay request shall be denied for two independent reasons.

First, the Petitioner's eleventh hour assertion of an entirely new claim in his summary judgment brief is procedurally improper. A plaintiff may not amend his complaint through an argument in a brief opposing summary judgment. Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (internal citation omitted). District courts in this circuit have adopted this holding from Gilmour. See Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp., 455 F.Supp.2d 399, 436 (D. Md. 2006); Miller v. Jack, 2007 WL 2050409, slip op. at *4 (N.D. W.Va. 2007); Caudill v. CCBCC, Inc., 651 F.Supp.2d 499, 510 (S.D. W.Va. 2009); RLM Communications, Inc., v. Tuschen, 66 F.Supp.3d 681, 701 (E.D.N.C. 2014).

The Petitioner has amended his § 2254 petition once already as a matter of course. Fed. R. Civ. P. 15(a)(1). Since the Respondent has filed a responsive pleading and has not provided written consent to an amendment, the Petitioner may amend his petition now only by leave of court. See Fed. R. Civ. P. 15(a)(2). Rule 15(a) directs that leave to amend shall be freely given "when justice so requires." Id. Therefore, absent a showing of undue delay, bad faith, futility, or prejudice to the opposing party, a Court should grant a party leave to amend. See Foman v. Davis, 371 U.S. 178, 182 (1962).

8

Here, allowing the Petitioner to assert an ineffective assistance claim at this late date would unduly prejudice the Respondent. See Laber v. Harvey, 438 F.3d 404, 427 (4th Cir. 2006) (en banc) (holding that amendment is prejudicial where it "raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial") (internal citation omitted). Therefore, even if the Petitioner had properly asserted a motion to amend his § 2254 petition, the Court would deny such request as unduly prejudicial.

Second, a motion to amend his § 2254 petition to assert an ineffective assistance claim would be futile, as the doctrine of procedural default would bar the Petitioner from pursuing his Sixth Amendment claim under North Carolina procedural law. "A procedural default . . . occurs when a habeas petitioner fails to exhaust available remedies in state court and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998) (quoting Coleman, 501 U.S. at 735 n.1). Here, the Petitioner did not raise his alleged constitutional challenge regarding the alleged ineffectiveness of his appellate attorney in the MAR he filed on September 25, 2024. If the Petitioner were to bring this constitutional challenge now in another MAR, the claim would be barred by

N.C. Gen. Stat. § 15A-1419(a)(1) (stating that MAR should be denied when, upon a previous MAR made, the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so).

The only way for the Petitioner to avoid procedural default in federal court is through a showing of "cause and actual prejudice." Reed v. Ross, 468 U.S. 1, 11 (1984) (citation omitted). "Cause for a procedural default . . . ordinarily requires a showing of some external impediment preventing [a prisoner] from constructing or raising the claim." Murray, 477 U.S. at 492. To establish prejudice, the prisoner must show not merely a substantial federal claim, such that " 'the errors at ... trial created a possibility of prejudice,' but rather that the constitutional violation 'worked to his actual and substantial disadvantage.' " Id. at 494 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).  The Petitioner, however, cannot show cause or actual prejudice for his defaulted claim.  At the time the Petitioner filed his first MAR in state court, he was in a position to adequately raise his purported Sixth Amendment claim.  His failure to do so then prevents him from doing so now or in the future.  Accordingly, any attempt by the Petitioner to amend his § 2254 petition to include a Sixth Amendment claim of ineffective assistance of appellate counsel would be futile as procedurally defaulted.  And, because the Petitioner has no viable avenue open to obtain relief for his Sixth

Amendment claim in state court, there exists no reason to stay this habeas proceeding. For all these reasons, the Petitioner's Motion to Stay [Doc. 20] shall be denied.

### C. The Petitioner's Motion to Appoint Counsel

The Petitioner moves this Court for the appointment of counsel to represent him. [Doc. 21]. There is no constitutional right to the appointment of counsel in a post-conviction proceedings. Crowe v. United States, 175 F.2d 799 (4th Cir. 1949); Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). Further, the operative § 2254 petition filed herein is subject to dismissal as all Grounds allege claims that will be denied on the merits. Accordingly, the Petitioner's Motion To Appoint Counsel [Doc. 21] shall be denied.

## IV. STANDARD OF REVIEW FOR DISPOSITIVE MOTIONS

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56). The burden then shifts to the nonmoving party to proffer competent evidence and specific facts showing that there is a genuine issue for trial. Id. at 323-24. The nonmoving party must oppose a summary judgment motion by going beyond the pleadings and by their own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Id. (citing Fed. R. Civ. P. 56). The nonmoving party "may not rest upon the mere allegations or denials of his pleading" to defeat a motion for summary judgment. Id. at 322 n.3.

Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the summary judgment motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. *Id. at 599.* A court is bound

to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

In reviewing the parties' cross motions for summary judgment, due to the nature of this action, the Court must also consider the requirements governing petitions for habeas corpus under 28 U.S.C. § 2254(d) of the AEDPA. That section of the AEDPA applies to "a person in custody under a state-court judgment who seeks a determination that the custody violates the Constitution, laws, or treaties of the United States." Rule 1(a)(1), 28 U.S.C. foll. § 2254. A federal court may not grant § 2254 relief as to any claim "adjudicated on the merits" in state court unless the state court's adjudication of such claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. § 2254(d).

A state court's decision constitutes an unreasonable application of clearly established federal law under § 2254(d)(1) when the state court

correctly identifies the "governing legal principle . . . but unreasonably applies that principle to the facts of the . . . case." <u>Barnes v. Joyner</u>, 751 F.3d 229, 238 (4th Cir. 2014) (citation omitted). To find an "unreasonable application of federal law" requires a "substantially higher threshold" to overcome. <u>Schiro v. Landrigan</u>, 550 U.S. 465, 473 (2007). In making this assessment, the habeas court looks "to whether the state court's application of law was objectively unreasonable and not simply whether the state court applied the law incorrectly." <u>Barnes</u>, 751 F.3d at 238-39 (citation omitted).

For a state court's factual determination to be held unreasonable under § 2254(d)(2), "[the determination] must be more than merely incorrect or erroneous." <u>Williams v. Stirling</u>, 914 F.3d 302, 312 (4th Cir. 2019) (citation omitted). The state court's finding must be "sufficiently against the weight of the evidence that it is objectively unreasonable." <u>Id.</u> (citation omitted). The AEDPA also provides that "a determination of a factual issue made by a State court shall be presumed to be correct" absent "clear and convincing evidence" to the contrary. 28 U.S.C. § 2254(e)(1). These provisions of the AEDPA, "operating in tandem," require that a petitioner seeking relief under § 2254(d)(2) establish that the state court's factual finding was "incorrect by clear and convincing evidence, and that the corresponding factual determination was objectively unreasonable in light of the record before the

14

court." <u>Merzbacher v. Shearin</u>, 706 F.3d 356, 364 (4th Cir. 2013) (quoting <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 348 (2003) (internal quotation marks omitted)).

In sum, a federal court "shall not" grant a writ of habeas corpus unless the earlier decision took an "unreasonable" view of the facts or law. 28 U.S.C. § 2254(d). By design, this "standard is difficult to meet." <u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011). The term "unreasonable" refers not to "ordinary error," plain error, or even to circumstances where the petitioner offers "a strong case for relief," but rather to "extreme malfunctions in the state criminal justice syste[m]." <u>Id.</u> (internal citation omitted). The critical question is whether the state court "managed to blunder so badly that every fairminded jurist would disagree" with its outcome. <u>Mays v. Hines</u>, 141 S. Ct. 1145, 1149 (2021).

## V. DISCUSSION

The Respondent filed her summary judgment motion on February 26, 2026, together with a Memorandum in support thereof which included seven exhibits. [Docs. 11; 12]. The Petitioner filed his summary judgment motion on May 4, 2026, together with his Brief in support thereof but with no proffered evidence. [Docs. 16; 16-1]. As the Respondent points out, the Petitioner's summary judgment motion and supporting brief simply reiterate

the same arguments as he alleged in the operative petition.  [Doc. 19 at 2].

In its Roseboro Order, the Court warned the Petitioner that "[i]f the Petitioner

has any evidence to offer to show that there is a genuine issue of fact, he

must now present it to this Court in a form which would otherwise be

admissible at a trial."  [Doc. 13 at 3].  The Petitioner has come forward with

no evidence or factual showing to contradict or refute the Respondent's

evidence, in particular, the Affidavit of Joshua Panter [Doc. 12-7], and the

NCDAC Database computer printout. [Doc. 12-8].  The Petitioner's failure to

proffer any evidence renders the Respondent's forecast of evidence

uncontroverted.  The Court will nevertheless address each of the Petitioner's

claims in his operative petition.

### A.    The Petitioner's Sole Ground in His Original Petition.

In his original § 2254 petition, the Petitioner asks this Court "[t]o provide

defendant with confinement credit not previously allow[ed] while APPEAL

was pending" citing N.C. Gen. Stat. § 15-196.1. [Doc. 1 at 6].  In support of

this Ground, the Petitioner asserts as follows:

> From September 19, 2022 the day I got found guilty by a jury till
> January 16, 2024 when my appeal became final, I was in
> confinement thru my whole appeal process and that would give
> me 484 days I spend in confinement pending my appeal.

[Id. (errors uncorrected)].   In essence, the Petitioner alleges that the

Respondent has violated North Carolina law by not giving him credit toward

his ultimate sentence for the time he spent in confinement from the date of his conviction through to the date his direct appeal concluded. The Petitioner's claim, as so stated, is not cognizable on federal habeas review. The Petitioner contends only that the North Carolina courts erroneously interpreted North Carolina law. Petitioner, thus, has argued no deprivation of any **federal rights** in this Ground.

A state inmate may invoke federal habeas jurisdiction only if he can establish that he is a person convicted under a state-court judgment and that he is in "custody in violation of the Constitution, laws, or treaties of the United States." 28 U.S.C. § 2254. The Supreme Court has made clear that a federal habeas court will not review any claim that concerns how a state court construes or applies its own statutory law and precedents.

> We have stated many times that "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L.Ed.2d 606 (1990); see also Pulley v. Harris, 465 U.S. 37, 41, 104 S. Ct. 871, 874–75, 79 L.Ed.2d 29 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.

Estelle v. McGuire, 502 U.S. 62, 63 (1991).

The Petitioner alleges no federal law violations anywhere in his original § 2254 petition. And for good reason: the Petitioner did not assert any federal

constitutional, statutory, or case law violations in his MAR proceeding, and the North Carolina courts never so much as mentioned federal law in their decisions. Because the Petitioner's claim implicates only state law, he cannot seek review of it in this habeas action. As such, the Petitioner's sole Ground as asserted in his original § 2254 petition is without merit and shall be denied.

**B.      Grounds One and Three of the Petitioner's Amendment.**

In the first and third Grounds set forth in his amendment as a matter of course, the Petitioner has simply recited two North Carolina statutory provisions, N.C. Gen. Stat. § 15-196.1, and N.C. Gen. Stat. § 15-196.4, respectively. [Doc. 6-1 at 1]. Other than reciting the language from these two statutes, the Petitioner has alleged no facts or otherwise indicated in these Grounds how he might be entitled to federal habeas relief. Accordingly, these two Grounds will be denied for failing to state any claims for relief.

**C.      Ground Five of the Petitioner's Amendment.**

The Petitioner's fifth Ground set forth in his amendment as a matter of course states in its entirety:

> Failure of the courts to entertain the claims would result in a fundamental miscarriage of justice cause of my actual innocence with my not guilty plea and going forward to trial then appeal which the record shows.

18

[Doc. 6-1 at 2 (errors uncorrected)]. The Petitioner's fifth Ground is difficult to decipher. It appears that the Petitioner seeks to assert that he is actually innocent of all his state charges—because he entered a not guilty plea, insisted upon his right to trial, and pursued a direct appeal—and that this Court's failure to address his actual innocence claim would result in a fundamental miscarriage of justice.

The Petitioner, however, has set forth no facts or theory of innocence that would support a post-conviction finding in his favor. There is no merit to this argument, let alone any fundamental miscarriage of justice. This Ground shall be denied for failure to state any claim.

### D. Grounds Two and Four of the Petitioner's Amendment.

In the second and fourth Grounds set forth in his amendment, the Petitioner asserts that being confined for the duration of his direct appeal without receiving any sentence credit for such time violates the Equal Protection clause (second Ground) and the Due Process clause (fourth Ground) of the Fourteenth Amendment to the U.S. Constitution. [Doc. 6-1 at pp. 2-3]. The Petitioner, however, never raised his alleged Equal Protection and Due Process violation claims in any North Carolina court. These claims are therefore unexhausted and subject to dismissal for that reason. Additionally, the Petitioner has procedurally defaulted these claims. The

Petitioner cannot show cause or actual prejudice for his default, as he has not alleged any "external impediment" that prevented him from raising the alleged Due Process and Equal Protection violations in his first MAR filed on September 25, 2024.

Even if the Petitioner could show cause, which he has not, he cannot demonstrate that the error worked to his actual and substantial disadvantage because his sentencing credit argument is meritless. In support her motion for summary judgment, the Respondent presents the affidavit of Joshua Panter, the Director of Operations for the North Carolina Department of Adult Correction, Division of Prisons. [Doc. 12-7]. Director Panter included with his affidavit a computer printout from his Department's database regarding the calculation of the Petitioner's sentence at issue. [Doc. 12-8]. Director Panter testifies that:

> offender Grady Steele (0871322) began serving his sentence on 19 September 2022, the same day as his conviction, and has been serving that sentence continuously since that date in the custody of the North Carolina prison system, including the dates at issue of 19 September 2022 to 16 January 2024.

[Doc. 12-7 at 3]. Director Panter's testimony is corroborated by the printout from the NCDAC Database which shows the Petitioner's date of conviction as "09/19/22" and his "sentence begin date 09/19/22." [Doc. 12-8 at 2]. As this Court noted previously, and as the Respondent has established with her

tender of uncontradicted evidence, the filings in this matter show that the Petitioner has in fact received full credit for the time he served between his date of conviction and the conclusion of his appeal.

There are no genuine issues of fact in dispute present in this action. The Petitioner offers nothing to show the reasons why he may have been denied relief in his MAR, except that he was asking for relief that he had already received. Petitioner's Grounds Two and Four in his amendment are procedurally defaulted, entirely without merit, and shall be denied.

## VI. CONCLUSION

For the reasons set forth above, the Court rejects all the Petitioner's claims for relief contained in his original petition and his amendment thereto because no genuine issue of material fact exists in this matter and the Respondent is entitled to judgment as a matter of law. Accordingly, the Respondent's summary judgment motion shall be granted, the Petitioner's summary judgment motion shall be denied, and the Petitioner's operative § 2254 petition shall be denied and dismissed.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability. 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (noting that, in order to satisfy § 2253(c), a petitioner must demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (holding that, when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

## O R D E R

**IT IS, THEREFORE, ORDERED** that:

1. The Petitioner's Motion for Extension of Time [Doc. 17] is **GRANTED** and the Petitioner's Motion for Summary Judgment is deemed timely filed;

2. The Respondent's Motion for Summary Judgment [Doc. 11] is **GRANTED**;

3. The Petitioner's Motion for Summary Judgment [Doc. 16] is **DENIED**;

4. The operative Petition for Writ of Habeas Corpus [Docs. 1; 6] is **DENIED** and **DISMISSED**;

5. The Petitioner's Motion to Stay [Doc. 20] is **DENIED**; and

6. The Petitioner's Motion to Appoint Counsel [Doc. 21] is **DENIED**.

22

**IT IS FURTHER ORDERED** that the Court **DECLINES** to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk of Court is respectfully directed to close this case.

**IT IS SO ORDERED.**

Signed: June 22, 2026

Martin Reidinger
Chief United States District Judge

23